IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ROBERT G. ROBERSON,  §<br>         PETITIONER,  §<br>                              §<br>v.                            §<br>                              §<br>DOUGLAS DRETKE, DIRECTOR,     §<br>TEXAS DEPARTMENT OF CRIMINAL  §<br>JUSTICE, CORRECTIONAL INSTITUTIONS §<br>DIVISION,                     §<br>         RESPONDENT.  § | CIVIL ACTION NO. 4:05-CV-417-Y |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND NOTICE AND ORDER**

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The findings, conclusions, and recommendation of the United States Magistrate Judge are as follows:

### I. FINDINGS AND CONCLUSIONS

#### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

#### B. PARTIES

Petitioner Robert G. Roberson, TDCJ-ID #1008416, is in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, in Amarillo, Texas.

Respondent Douglas Dretke is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

#### C. FACTUAL AND PROCEDURAL HISTORY

Roberson was charged by indictment with capital murder in Cause No. 0700839D in the

Criminal District Court Number Two of Tarrant County, Texas. (1Clerk's R. at 1B.) Roberson's trial commenced on October 3, 2000.

At trial, the state produced evidence that Roberson and his wife Lorraine had a tumultuous and abusive marriage and that at the time of her murder the two were separated. (4Reporter's R. at 49, 120, 134-35, 147-51.) Roberson had threatened to kill Lorraine if she ever left him or took the kids. (*Id.* at 51, 63-64, 79-81.) On the night of July 21, 1998, an intruder gained access to Lorraine's apartment and locked the keyless deadbolt from inside. (*Id.* at 52-54, 60; 5Reporter's R. at 23, 73-74.) When Lorraine returned, she was unable to unlock the door from the outside. (5Reporter's R. at 26, 57-59.) At some point, the intruder unlocked the door, and Lorraine was able to open the door. At that time, the intruder pulled Lorraine inside, locked the door again, and beat her with a baseball bat. (5Reporter's R. at 64, 67, 196, 198, 258-60, 275-76; 6Reporter's R. at 41, 64.) Lorraine's brother heard her scream his name and yell for help, but he could not open the locked door. (5Reporter's R. at 60.) He left to call 911, and, upon returning to the apartment, he saw Roberson turning the corner from Lorraine's apartment carrying a baseball bat. (*Id.* at 67-69.) The bat was found in a field near the apartment complex. (5Reporter's R. at 191, 198-99.) Lorraine died from blunt force trauma to her head. (5Reporter's R. at 262.) Roberson fled the state and several days later surrendered to authorities in Chicago. (5Reporter's R. at 227-28.) At that time, one lense of his eye glasses was missing, and Roberson had various scratches and cuts on his wrists and arms. (5Reporter's R. at 227-33.) Glass fragments found at the scene and in Roberson's vehicle were consistent with the missing lens. (6Reporter's R. at 20.) Blood on the baseball bat, Roberson's eye glasses, and the glass fragments belonged to Lorraine. (6Reporter's R. at 38-42.) Prior to the night in question, on one or more occasions, Roberson had access to and/or possession of Lorraine's

2

keys. (4Reporter's R. at 52-52.)

Based on the evidence, a jury found Roberson guilty of capital murder as alleged in the indictment, and the trial court assessed an automatic life sentence. (2Clerk's R. at 455.) Roberson appealed his conviction and sentence, but the Second District Court of Appeals affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused his petition for discretionary review. *Roberson v. State*, 113 S.W.3d 381 (Tex. App.–Fort Worth , pet. ref'd); *Roberson v. State*, PDR No. 1205-03. Thereafter, Roberson filed a state application for writ of habeas corpus challenging his conviction and sentence, which was denied without written order on the findings of the trial court by the Texas Court of Criminal Appeals. *Ex parte Roberson*, No. WR-60,874-01, at cover. Roberson filed this petition in the United States District Court for the Northern District of Texas, Dallas Division, and the action was transferred to this division by order dated June 28, 2005. *See Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998) (holding pro se habeas petition filed when papers delivered to prison authorities for mailing). Dretke has filed an answer with supporting documentary exhibits, to which Roberson did not reply.

### D. ISSUES

In four grounds, Roberson raises the following claims:

> (1) There was no evidence to support a capital murder conviction;
>
> (2) The indictment violates the state's so-called merger doctrine; and
>
> (3) He received ineffective assistance of trial and appellate counsel. (Petition at 7-8.)

### E. RULE 5 STATEMENT

Dretke believes that Roberson has sufficiently exhausted his state remedies on the issues presented and thus does not move for dismissal on exhaustion grounds. (Resp't Answer at 9.)

3

F. DISCUSSION

1. Legal Standard for Granting Habeas Corpus Relief

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

Further, federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting this presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, as the court did here, it is an adjudication on the merits, which is entitled to this presumption. *Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003); *Ex parte Torres*,

4

943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

2.  No Evidence

The indictment charged Roberson with capital murder in count one and murder in count two. (Clerk's R. at 1B.)  Before trial, the state waived count two.  (3Reporter's R. at 4.)  Count one alleged that on the relevant date Roberson "did then and there intentionally cause the death of an individual, Lorraine Roberson, by hitting her with a baseball bat, and the said [Roberson] was then and there in the course of committing or attempting to commit the offense of burglary . . . ." (Clerk's R. at 1B.)  Section 30.02(a) of the Texas Penal Code defines "burglary" as follows:

> (a) A person commits an offense if, without the effective consent of the owner, the person:
> (1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault; or
> (2) remains concealed, with intent to commit a felony, theft, or an assault, in a building or habitation; or
> (3) enters a building or habitation and commits or attempts to commit a felony, theft, or an assault.

TEX. PENAL CODE ANN. § 30.02(a) (Vernon 2003).

The jury was initially instructed that a person commits burglary "if, without the effective consent of the owner, he enters a habitation with intent to commit a felony or an assault.  (Clerk's R. at 440.)  At the jury's request, the trial court gave the following supplemental instruction:

> A person commits the offense of Burglary if, without the effective consent of the owner, he enters a habitation with intent to commit a felony or an assault, or enters a habitation and commits or attempts to commit a felony or an assault. (*Id.* at 452.)

Roberson claims that an essential element of burglary is theft and that there was no evidence of theft to "substantiate burglary." (Pet'r Brief in Support at 2.) In this case, however, it was not the state's theory that Roberson entered Lorraine's apartment to commit theft or attempt to commit theft.

5

Instead, the state's theory was that Roberson entered Lorraine's apartment with the intent to commit any felony or an assault (subsection (a)(1)), or that he entered the apartment and then committed or attempted to commit any felony or an assault (subsection (a)(3)). The evidence was sufficient for any rational jury to find beyond a reasonable doubt that Roberson committed burglary under one of these theories. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (providing that the relevant question is only whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt).

### 3. Indictment

Roberson claims the indictment violated the state's merger doctrine by bootstrapping a capital murder charge with a murder charge. (Pet'r Brief in Support at 3-4.) The state habeas court, however, determined that under Texas law the merger doctrine was inapplicable to capital murder prosecutions and that Roberson had, thus, failed to prove that the indictment violated the doctrine or his right to due process. (State Habeas R. at 55.) The sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it is shown that the indictment is so defective that the convicting court had no jurisdiction. *See Lockett v. Anderson*, 230 F.3d 695, 702 (5th Cir. 2000); *Alexander v. McCotter*, 775 F.2d 595, 598-99 (5th Cir. 1985). Roberson has not made such a showing.

### 4. Ineffective Assistance of Counsel

Roberson claims he received ineffective assistance of trial and appellate counsel. A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland*

6

*v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). An ineffective assistance claim is governed by the standards set forth in *Strickland v. Washington.* 466 U.S. at 668. *See also Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001) (applying the *Strickland* standard to ineffective assistance claims against appellate counsel). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where, as here, a petitioner's ineffective assistance claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the standard set forth in *Strickland*. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Santellan v. Dretke*, 271 F.3d 190, 198 (5th Cir. 2001). Under this standard, the state court's application of *Strickland* must be shown to be not only erroneous, but objectively unreasonable. *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003).

Roberson asserted his claims in his state habeas application, however, after holding a hearing by affidavit, the trial court entered findings of fact refuting his allegations of ineffective assistance. (State Habeas R. at 36-57.). The state court's findings were largely based on the affidavits of Roberson's trial and appellate counsel concerning their representation of Roberson. (*Id.* at 36-47.)

7

In turn, the Texas Court of Criminal Appeals denied relief based upon the trial court's findings. As previously noted, this constitutes an adjudication on the merits of the claims and is entitled to the presumption of correctness. *See Neal*, 286 F.3d at 235. Having independently reviewed Roberson's claims in conjunction with the state court records, it does not appear that the state courts' application of *Strickland*'s attorney-performance standard was erroneous or objectively unreasonable. Moreover, Roberson's arguments fall short of satisfying the prejudice element of *Strickland*. The evidence of Roberson's guilt was overwhelming and it is unlikely that the result of his trial would have been different but for trial counsel's alleged errors. *See Thomas v. Lynaugh*, 812 F.2d 225, 230 n.7 (5th Cir. 1987). Thus, the state courts' adjudication of his ineffective-assistance claims is entitled to the appropriate deference.

Roberson claims trial counsel was ineffective by pursuing a strategy so poor as to rob him of the opportunity for a fair trial. (Pet'r Brief in Support at 4-8.) More specifically, Roberson complains that counsel (1) failed to adequately investigate the law regarding the defense of sudden passion, (2) raised the defense but later inexplicably abandoned the defense, and (3) failed to investigate and present mitigating evidence. (*Id.*) Trial counsel's affidavit demonstrates, however, that counsel was familiar with the law regarding the defense of sudden passion and that counsel discussed various defensive issues with Roberson, including the defense of sudden passion. Counsel states:

> With respect to the issue of raising "sudden passion," it was counsel's intent to raise this as a potential issue in the event the jury found the defendant guilty of the lesser included offense of murder, as opposed to the charged offense of capital murder. As previously stated, the gruesome nature of the offense reflected a crime or passion in light of the prior relationship of the parties and the intense nature of the violence inflicted upon the victim. Mr. Roberson agreed with this defensive theory in the event the jury found he committed the act, yet found no separate offenses to this make [sic] it murder, rather than capital murder.

8

>The "sudden passion" issue would certainly have been relevant if he was found guilty of the lesser offense of murder. Such an issue cannot be raised at the guilt-innocence phase–only at the punishment phase, if the offense of murder is the verdict. See § 19.02(d) Tex. Penal Code. (State Habeas R. at 36-37.)

An attorney's conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness. *See Ward v. Dretke*, 420 F.3d 479, 491 (5th Cir. 2005); *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997). Counsel's decision here was not objectively unreasonable. Further, Roberson fails to state with specificity what a more thorough investigation would have revealed in the way of mitigating evidence or how it would have altered the outcome of the trial. *See id*. Where the death penalty is waived and a defendant is found guilty of capital murder, Texas law requires the trial court to assess an automatic life sentence. *See* TEX. PENAL CODE ANN. § 12.42(c)(2) (Vernon Supp. 2005).

Roberson claims appellate counsel was ineffective by failing to (1) communicate with him, (2) allow his input regarding the issues to be raised on appeal, and (3) raise his no-evidence and ineffective assistance claims on appeal. (Pet'r Brief in Support at 8-10.) Appellate counsel, however, is not required to raise every conceivable argument urged by his client on appeal, regardless of merit. *Robbins*, 528 U.S. at 288. It is counsel's duty to choose among potential issues, according to his judgment as to their merits and the tactical approach taken. *Jones v. Barnes*, 463 U.S. 745, 749 (1983). Counsel is not ineffective when he fails to present non-meritorious grounds, such as Roberson's no-evidence claim, on appeal. *See Smith v. Collins*, 977 F.2d 951, 962 (5th Cir. 1992) (providing counsel not required to raise frivolous issues on appeal). Further, the trial record was insufficient to raise Roberson's ineffective assistance claims against trial counsel. (State Habeas R. at 69-71.) As a matter of Texas law, a postconviction habeas application, and not direct

appeal, is generally the appropriate vehicle for bringing forth an ineffective assistance claim. *See Robinson v. Texas*, 16 S.W.3d 808, 810-11 (Tex. Crim. App. 2000); *Thompson v. Texas*, 9 S.W.3d 808, 813-14 n.5-6 (Tex. Crim. App. 1999).

## II.  RECOMMENDATION

Roberson's petition for writ of habeas corpus should be denied.

## III.  NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within ten (10) days after the party has been served with a copy of this document.  The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until January 11, 2006.  The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made.  *See* 28 U.S.C. § 636(B)(1).  Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual finding or legal conclusion accepted by the United States District Judge.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc op. on reh'g); *Carter v. Collins*, 918 F.2d 1198, 1203 (5th Cir. 1990).

## IV.  ORDER

Under 28 U.S.C. § 636, it is ORDERED that each party is granted until January 11, 2006,

10

to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED December 21, 2005.

      /s/ Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE